CATHERINE E. BARNES *vs.* JAMES J. RYAN.

Essex.    March 10, 1899. — July 3, 1899.

Present: HOLMES, KNOWLTON, LATHROP, BARKER, & HAMMOND, JJ.

*Bastardy — Discharge as a Bar to a subsequent Complaint for the same Offence.*

A discharge of a man, after a hearing on a complaint for bastardy in a police court,
is not a bar to a subsequent complaint against him in the same court for the
same offence.

COMPLAINT, under the bastardy act, Pub. Sts. c. 85. At the
trial in the Superior Court, before *Richardson,* J., the jury re-
turned a verdict of guilty; and the respondent alleged excep-
tions, which appear in the opinion.

*J. H. Sisk,* for the respondent.

*R. W. Gloag,* for the complainant.

LATHROP, J. The question in this case is whether a man who
has been discharged by a police court after a hearing on a com-
plaint for bastardy, can set up this discharge as a bar to a subse-
quent complaint for the same offence.

Both complaints were made to the police court of Lynn, under
the Pub. Sts. c. 85, § 1, as amended by the Sts. of 1885, c. 289,
and 1891, c. 367. The amendments do not, however, affect the
case.

An examination of the provisions of the Pub. Sts. c. 85, shows
that the jurisdiction of an inferior court in bastardy cases is a
very limited one. By § 1, it may issue a warrant against the
person accused. By § 4, a person arrested upon such a warrant
may be released upon giving a bond with sureties, for his appear-
ance in court for a time specified. By § 6, the court may con-
tinue from time to time the hearing of the complaint, and may
take a bond from the accused for his appearance at any continu-
ance, and, as amended by the St. of 1891, c. 367, may order him
to be committed until such bond is given. By § 7, if the accused
does not appear, his default shall be recorded; and the bond,
with a copy of the complaint and warrant, and a copy of the
record of the court, is to be transmitted to the Superior Court in
the same county, where the complaint is entered and proceeded

with. And if the accused is adjudged by the court, on a final hearing of the complaint, "to be the father of the child of which he is accused," the bond shall be security for the performance by him of any order of the court under § 15. A reference to § 15 shows that the word "court," as used in the last sentence, refers to the Superior Court.

Section 9 is the most important section relating to the question before us. "The court or trial justice before whom the warrant is returnable may after due hearing require the accused to give bond with sufficient sureties to appear and answer to the complaint at the next term of the Superior Court holden for the transaction of civil business, and abide the order of court thereon; and may order him to be committed until such bond is given."

By § 15, the issue to the jury is whether the defendant is guilty or not guilty; and if the jury find him guilty, or if he is defaulted, he shall be adjudged by the court to be the father of such child, and shall stand charged with the maintenance thereof, with the assistance of the mother, in such manner as the court shall order. The section also contains provisions as to bonds. Section 22 provides: "Prosecutions under this chapter, except as herein otherwise expressly provided, shall be according to the course of proceedings in civil cases." This section was first enacted in 1851. St. 1851, c. 96, § 1. Gen. Sts. c. 72, § 13.

This review of the provisions of the chapter shows that the proceedings in an inferior court are preliminary in their nature, and that such a court has no final jurisdiction in the matter. While nothing is said in the statute as to the right of the court to discharge the accused, this is naturally to be understood, where the evidence is insufficient to show probable cause to hold him. But no power is given the court to acquit him, or to render judgment in his favor which could be pleaded as *res adjudicata.* The court has no power to try the accused, but only to give him a hearing, and then to bind him over or to discharge him. In *Jennings* v. *Browne*, 167 Mass. 543, it was held that the statute gives no right of appeal to the complainant, in case the respondent is discharged.

While no further proceedings can be had on the original complaint after the accused is discharged, and while there is nothing

in the statute which expressly authorizes a second complaint, yet there is nothing in the statute to the contrary, and the nature of the proceedings in the inferior court is such, that we are of opinion that a new complaint may be made, when the accused is discharged for want of sufficient evidence to hold him.

The question has not been presented in this Commonwealth, but it has been much considered in other States of this country, and in England, under statutes similar to our own; and, so far as we know, the decisions are in accordance with the views above expressed.

The leading case is *The Queen* v. *Machen*, 14 Q. B. 74, under the statute of 7 & 8 Vict. c. 101. Of this statute it was said by Lord Chief Justice Denman : " It authorizes the justices in petty sessions, upon certain evidence, to adjudge the party summoned to be the putative father, and to order him to pay money, and gives him a right of appeal ; but it contains no direction as to what is to be done if the case is not made out to their satisfaction. . . . We cannot, therefore, see that the Legislature intended them to have any power to adjudicate finally against the mother. Their dismissal of the application is rather in the nature of a nonsuit in an action ; in which case the plaintiff may come again better prepared." Stress was laid also on the fact that the mother had no right of appeal. A writ of mandamus was accordingly issued to the inferior tribunal, directing it to hear a second application. This case was followed in *The Queen* v. *Gaunt*, L. R. 2 Q. B. 466. The English statute provides that an application shall be made within one year from the birth of the child, and in cases where the second application was not made within that time, it has been dismissed for that reason, though the general doctrine has been recognized as still in force. *Regina* v. *Thomas*, 8 L. T. (N. S.) 460. *Staples* v. *Staples*, 41 L. T. (N. S.) 347. *The Queen* v. *Robinson*, [1898] 1 Q. B. 734.

The principal cases in this country are *Marston* v. *Jenness*, 11 N. H. 156 ; *Davis* v. *State*, 6 Blackf. 494 ; *Nicholson* v. *State*, 72 Ala. 176 ; *In re Parker*, 44 Kans. 279. All these accord with our views.

We have not been unmindful of the argument that a man should not be subjected to two complaints on the same matter. But even in a criminal case this may be done, where the court

discharges a man for want of probable cause to hold him. *Commonwealth* v. *Sullivan*, 156 Mass. 487. In such a case there is no acquittal on the first complaint. In proceedings under the bastardy act, we are of opinion, for the reasons already given, that the discharge on the first complaint cannot be pleaded as *res adjudicata*. In *The Queen* v. *Machen, ubi supra*, it is said by Lord Chief Justice Denman : " We are far from saying that the dismissal is to have no weight; but we think that the justices cannot refuse to hear the second application. If it should appear to them that the matter was fully inquired into on the first occasion, they will reasonably view any new evidence with much suspicion, and sift it accordingly ; but we do not think that the dismissal can operate as a bar to further inquiry."

As we find no error in the overruling by the Superior Court of the respondent's motion to dismiss the complaint on account of his discharge on the first complaint, the order must be

*Exceptions overruled.*